AARON AJAMIAN, PLAINTIFF-RESPONDENT, v. ISIDORE SCHLANGER, HENRY SCHLANGER AND SIDNEY SCHLANGER, TRADING AS I. SCHLANGER & CO., DEFENDANTS-APPELLANTS; HARRY M. AJAMIAN, ADDITIONAL DEFENDANT ON COUNTERCLAIM OF ISIDORE SCHLANGER, HENRY SCHLANGER AND SIDNEY SCHLANGER, TRADING AS I. SCHLANGER & CO.

Argued January 4, 1954—Decided February 15, 1954.

484

*Mr. Isadore Glauberman* argued the cause for appellants.

*Mr. Aaron Ajamian,* respondent, argued the cause *pro se.*

The opinion of the court was delivered by

WILLIAM J. BRENNAN, JR., J. Notable among the reforms introduced by the Judicial Article of the 1947 Constitution and the implementing rules of court is the fusion of the powers of Law and Chancery in one Superior Court functioning within a simple and flexible procedural framework designed and purposed for the just and expeditious determination in a single action of the ultimate merits of an entire controversy between litigants. It is a fundamental objective of this procedural reform to avoid the delays and wasteful expense of the multiplicity of litigation which results from the splitting of a controversy. *Massari v. Einsiedler,* 6 *N. J.* 303 (1951); *In re McFeely's Estate,* 8 *N. J.* 9 (1951); *Tumarkin v. Friedman,* 17 *N. J. Super.* 20 (*App. Div.* 1951), certif. den. 9 *N. J.* 287 (1952).

 The policy of the new practice contemplates that the Superior Court litigant not only should initially plead any legal and equitable claims or defenses, whether or not consistent, supporting his position in the controversy and seek all legal or equitable remedies which he may desire, but also, with the aid of the broad discovery and pretrial procedures by which he may obtain all the facts material to the positions of both sides, that he should avail himself of the liberality allowed to form and reform his pleadings and the pretrial order accordingly, the opportunities for such amendment being restricted, in any substantial degree, only by *R. R.* 4:29–1 (15) and 4:15–2 applicable to amendments offered after the entry of the pretrial order, or during trial.

The instant appeal involves a question concerning the alternative and inconsistent rights and remedies available to an allegedly defrauded purchaser of a business to disaffirm and rescind the transaction or to affirm and recover damages for the deceit. 5 *Williston, Contracts, sec.* 1528;

*Restatement, Contracts, sec. 381, com. (d)*; 18 *Am. Jur., Election of Remedies, sec. 18, p.* 141.

The purchaser, Harry M. Ajamian, bought an embroidery business from the defendants in June 1946. Within a month after taking possession he became aware of the allegedly fraudulent nature of representations allegedly made by the defendants to induce him to make the purchase. Nevertheless, he continued until March 1947 to deal with the property and to make instalment payments of the purchase price. On March 3, 1947, he filed a bill of complaint for rescission in the former Court of Chancery. The case was not moved, however, for almost three years, and on February 17, 1950, when it came on for pretrial conference, had been pending in the Superior Court for 17 months after its automatic transfer to that court on September 15, 1948 pursuant to *Article* XI, *sec. 4, par. 8(e)* of the *Schedule to the* 1947 *Constitution.* The rules of court also became effective on September 15, 1948, and the plaintiff does not suggest that the purchaser, at least by the time he moved the case, had any excuse on the ground of novelty of the practice or otherwise which relieved him of the necessity of prosecuting the action according to the rules.

At the pretrial conference the defendants requested and were granted leave to amend their answer affirmatively to plead the defense of laches and estoppel "by reason of his [the purchaser's] conduct in the premises" and those issues were included among the ones listed in the pretrial order for disposition at the trial. However valid the purchaser's reasons for not earlier offering an amendment to ask legal damages for deceit, at least alternatively with the remedy of rescission, certainly it was highly imprudent not to offer such an amendment after this forewarning of the defendant's position, particularly as the purchaser among all parties concerned was best informed as to his acts of conduct upon which the defenses were based. But he made no attempt to amend, then or during the three months which elapsed before trial, and went to trial pursuing the remedy of rescission only. His proofs were heard, and, as he might

well have anticipated, his own testimony supplied the facts which substantiated the defense that he had ratified the contract before bringing suit and was thus not entitled to rescind. Defendants' counsel accordingly moved for judgment at the close of his proofs and the trial judge, without determining the merits of the fraud charge (defendants' witnesses were present in court, but the disposition made rendered their testimony unnecessary), granted the motion. Even after the trial judge's oral decision from the bench had made his plight clear the purchaser offered no amendment although an opportunity to amend at that stage might readily have been allowed subject to the limitations of former *Rule* 3:15–2, now *R. R.* 4:15–2. Instead he appealed to the Appellate Division from the judgment. Oral argument on the appeal was heard on May 26, 1952.

Before the decision of the Appellate Division, which affirmed the judgment, was filed on July 1, 1952, *Ajamian v. Schlanger*, 20 *N. J. Super.* 246 (1952), the purchaser assigned his claim to plaintiff here, his brother, Aaron *Ajamian*, a member of the New York bar, who on June 12, 1952 commenced a new action in the Law Division of the Superior Court by filing a complaint making allegations virtually identical with the allegations in the bill of complaint for rescission, but asking damages for the alleged deceit. Defendants moved for summary judgment on the basis of the prior determination in the rescission suit, but the motion was denied. On appeal, the Appellate Division affirmed, one judge dissenting, 29 *N. J. Super.* 497 (1953). This appeal is therefore here under former *Rule* 1:2–1(*b*), now *R. R.* 1:2–1(*b*).

██ Under the former practice, a Chancery judgment adverse to the complainant, resting not upon an adverse determination of the fraud charge making applicable the principles of *res adjudicata, cf. Simon & Diamond Coal & Lumber Co. v. Belz,* 107 *N. J. Law* 193 (*E. & A.* 1930), or upon other matter raising an estoppel, but, as here, upon a finding of the unavailability of the rescission remedy by reason of the complainant's ratification of the contract before bring-

ing suit, would probably not have barred the subsequent action at law for damages for the deceit. *Stambovsky v. Cohen,* 124 *N. J. Eq.* 290 (*E. & A.* 1938). But this was because the former Court of Chancery had no jurisdiction to entertain a claim for the purely legal remedy and it was rightly considered to be inordinately harsh and unjust to conclude a complainant, denied the opportunity in the Chancery action, from seeking the only remedy for the fraud in fact available to him. See *Adams v. Camden Safe Deposit & Trust Company,* 121 *N. J. L.* 389 (*Sup. Ct.* 1938); *Levy v. Massachusetts Accident Co.,* 127 *N. J. Eq.* 49 (*E. & A.* 1940). The former Court of Chancery recognized, however, that in jurisdictions where legal and equitable powers were merged in the same court, the law action is ordinarily barred when the plaintiff fails to take advantage of his opportunity to seek the legal relief in his original action. See *Knight v. Electric Household Utilities Corp.,* 133 *N. J. Eq.* 87, 92 (*Ch.* 1943). With the merger of equitable and legal powers in the Superior Court as of September 15, 1948, there appearing to be no equities in defendants' favor to bar him, this purchaser was at liberty after that date to amend his rescission complaint to ask the legal relief alternatively, *Rule* 3:8–5, now *R. R.* 4:8–5, or to abandon the rescission claim and pursue the legal remedy, up to the time of or at the pretrial conference, and, within limitations, even after the entry of the pretrial order, or at the trial. Therefore, when at the pretrial conference the infirmity of his case pointing to the futility of his quest for rescission was made apparent to him while there still remained ample opportunity for amendment and he offered none, preclusion of the new and independent action for damages by his assignee must follow if the policy to avoid undue litigation is not to be emptied of substance. Effectuation of the policy requires that the purchaser's conduct be viewed in its only proper light as a deliberate and conscious waiver of his legal remedy. *United States v. Oregon Lumber Co.,* 260 *U. S.* 290, 43 *S. Ct.* 100, 67 *L. Ed.* 261 (1922). To tolerate his pressing of the pursuit for rescission, even though futile from the

outset, to the limits to which it was carried here after the clear warning of its infirmities when the opportunity to shift his ground was still open to him, and to sanction his holding in reserve his one available remedy for the purpose of attack in another suit, would be utterly destructive of the policy to avoid multiplicity of litigation. "To hold otherwise would be to revive one of the worst defects of the old order and to do violence to both the letter and the spirit of the new Constitution." *State ex rel. Wm. Eckelmann, Inc., v. Jones*, 4 *N. J.* 374, 383 (1950).

■ Comment upon another change, this concerning a related aspect of the former practice, is appropriate. A subsequent law action for damages was barred under that practice if the victim of the fraud actually had both legal and equitable remedies available to him and, knowing the facts, chose to seek rescission in Chancery. In such case the institution of the rescission suit was "usually regarded as a decisive act * * * a conclusive waiver of inconsistent, contradictory, and inimical modes of redress, even though the election has not been acted upon by another to his detriment." *Lizak v. Rottenbucher*, 140 *N. J. Eq.* 76, 81 (*Ch.* 1947); and see *Micheloni v. Troy Hills, Inc.*, 121 *N. J. Eq.* 117 (*E. & A.* 1936); *Claron v. Thommessen*, 96 *N. J. Eq.* 650 (*E. & A.* 1924); *cf. Titus v. Phillips*, 18 *N. J. Eq.* 541 (*E. & A.* 1867). · It is plain that that rule cannot and does not obtain under the new practice. Now that the victim may have recourse to the Superior Court empowered to grant him the remedy he prefers under a practice allowing him, barring special equities favoring his adversary, freedom to shift his ground to seek the legal remedy alternatively or in substitution for rescission, he cannot be deemed conclusively to have waived the legal remedy without far more evidence than the mere filing of the complaint. It must appear, as it does in the instant case, that the victim, although knowing or being made aware of the risk, lets pass the opportunities afforded by the new practice for a shift of ground and remains steadfast in his pursuit of the equitable remedy. *Young v. George C. Fuller Contracting*

*Co., Inc.,* 12 *N. J. Super.* 554 (*Law Div.* 1951); and see *Friederichsen v. Renard,* 247 *U. S.* 207, 62 *L. Ed.* 1075 (1917). Indeed, unless equities in favor of other parties intervene, his final choice of remedy under appropriate pleadings and pretrial order may await the close of the proofs at the trial. See *Schrage v. Liebstein,* 16 *N. J. Super.* 384 (*App. Div.* 1951), certif. den. 8 *N. J.* 431 (1952).

The judgment of the Appellate Division is reversed and the cause is remanded to the Law Division with direction to enter summary judgment in favor of the defendants.

*For reversal*—Chief Justice VANDERBILT, and Justices OLIPHANT, WACHENFELD, BURLING and BRENNAN—5.

*For affirmance*—Justice HEHER—1.