273 N.J. Super. 617 (1993)
642 A.2d 1074
MICHAEL B. GROSS, MICHAEL B. GROSS, INC., MARC F. BENSON AUTOMOTIVE INSIGHTS, INC., CURTIS B. BEAN, AUTO INSIGHTS, INC., ALLEN TANSIL, WILLIAM LITTLE, CAR PROFILE, INC., MICHAEL G. CAPRISTO, JOHN G. VINCENT, AUTOMOTIVE EVALUATIONS LTD., SMB ENTERPRISES, INC., STEVE BELDEN, GAHAN BUCKMASTER, PARTNERS, GREG BUCKMASTER, NORMAN ED DAHLE, A & Z ENTERPRISES, INC., STEVE LISA CEVERA, PRAVIN PATEL, SUDHA PATEL, NEW MARKET PLACE CONCEPTS, INC., WILLIAM STANGE, TIMM, INC., MARK TIMM, TARA TIMM, AUTO ADVISORS, INC., BOB WILLIS, DEAN SHOOK, SANDY SHOOK AND STEPHEN R. ROOS, PLAINTIFFS,
v.
COHEN DUFOUR & ASSOCIATES, FRANCHISE BROKERS NETWORKS, INC., ANTONIO INACIO, ESQ., AND TENZER, GREENBLATT, FALLON & KAPLAN, DEFENDANTS. COHEN DUFOUR & ASSOCIATES, THIRD PARTY PLAINTIFF,
v.
CAR CHECKERS OF AMERICA, INC., A NEW JERSEY CORPORATION WENDY M. GELLER AND LEE S. GELLER, THIRD PARTY DEFENDANTS. ANTONIO INACIO, ESQ., THIRD PARTY PLAINTIFF,
v.
CAR CHECKERS OF AMERICA, INC., A NEW JERSEY CORPORATION WENDY M. GELLER AND LEE S. GELLER, JOHN DOES 1-10 (NAME BEING FICTITIOUS), ABC CORPORATIONS 1-10 (NAME BEING FICTITIOUS), THIRD PARTY DEFENDANTS.
Superior Court of New Jersey, Law Division Essex County.
September 9, 1993.
*619 Craig R. Tractenberg for plaintiffs (Abraham, Pressman & Bauer, attorneys, Mr. Tractenberg of counsel and on the brief).
Roger B. Kaplan for defendant Cohen DuFour & Associates (Wilentz, Goldman & Spitzer, attorneys; Mr. Kaplan of counsel and on the brief and James A. Robertson on the brief).
Angela A. Iuso for defendant Antonio Inacio, Esq. (Connell Foley & Geiser, attorneys; Ms. Iuso of counsel and on the brief).
Edward A. Zunz, Jr. for defendant Tenzer, Greenblatt, Fallon & Kaplan (Riker, Danzig, Scherer, Hyland & Perietti, attorneys; Mr. Zunz, Jr., of counsel and on the brief).
Thomas V. Manahan for defendant Franchise Brokers Networks, Inc. (Satterlee, Stephens, Burke & Burke, attorneys, Mr. Manahan of counsel and on the brief).
*620 CASSINI, J.S.C.
This case was commenced on March 13, 1992 by the filing of a complaint by plaintiffs in Superior Court of New Jersey ("State Action"). Prior thereto, a matter had been commenced on December 18, 1991, in the United States District Court for the District of New Jersey ("Federal Action") by some of the plaintiffs in this case. An Amended Complaint was filed in the Federal Action on January 23, 1992 to include additional plaintiffs, all of whom are identical to those plaintiffs named in the State Action.
The Federal Action was brought by plaintiffs against Car Checkers of America, Inc., its President and Vice President, Wendy M. Geller and Lee S. Geller, respectively (collectively "Car Checkers"). Car Checkers is a New Jersey based national franchisor that offers franchises for the operation of mobile used-vehicle diagnostic inspection and appraisal service businesses. Plaintiffs are various existing or potential franchisees (i.e. those who have entered into franchise development agreements with Car Checkers). Jurisdiction arose out of diversity jurisdiction and federal question jurisdiction based on an alleged violation of the Racketeer Influenced Corrupt Organization Act (RICO).
In their federal complaint, plaintiffs assert that defendants included false information in their Uniform Franchise Offering Circular (UFOC) which was provided to each purchaser or potential franchisee, that they created "Phantom Franchisees" which allegedly did not exist and made material misrepresentations regarding the profitability of the franchise program. In addition, plaintiffs allege: (1) RICO violations; (2) common law fraud; (3) breach of duty of good faith and fair dealing; (4) breach of contract; and (5) negligence.
In their state court complaint, plaintiffs included defendants who were not named in the Federal Action. The state court defendants consist of: Cohen, DuFour & Associates, a public accounting firm; Franchise Brokers Networks, Inc., brokers; Antonio Inacio, Esq., in house counsel and the law firm of Tenzer, Greenblatt, Fallon and Kaplan, outside counsel, all of whom are *621 various professionals who had been retained by or employed by the Federal Action defendants. In addition, the State Action raises claims of fraud, negligence and similar related allegations as those contained in the Federal Action.
It is argued by the state defendants that the state court complaint arises out of the identical transactions and occurrences which formed the bases for the Federal Action. That is, the State Court Action mirrors the allegations contained in the Federal Action and arise out of identical circumstances as those pleaded in the district court complaint.
Defendant, Cohen, DuFour & Associates, now moves to dismiss the state complaint based on the entire controversy doctrine. All other state court defendants have subsequently joined in this motion. Defendants contend that the entire controversy doctrine bars the plaintiffs from litigating in state court against parties who were not included in the Federal Action.
The "entire controversy doctrine", pursuant to R. 4:30A, provides as follows:
Non-joinder of claims or parties required to be joined by the entire controversy doctrine shall result in the preclusion of the omitted claims to the extent required by the entire controversy doctrine .. .
This rule does not define the doctrine but nonetheless alerts litigants of potential claim exclusion both against non-parties as well as parties. The rule was adopted, in part, as a result of the New Jersey Supreme Court's decision in Cogdell v. Hospital Center at Orange, 116 N.J. 7, 560 A.2d 1169 (1989). In Cogdell, the Supreme Court set forth the parameters of the rule and extended the application of the entire controversy doctrine to germane claims against non-parties. Pursuant to the holding in Cogdell, which preceded R. 4:30A, the entire controversy doctrine precludes actions against non-parties who should have been joined in a previously filed action.
Our courts have held that the entire controversy doctrine bars a state court suit against parties which could have and should have been joined in a previous federal action. In Mortgageling v. *622 Commonwealth Land Title, 262 N.J. Super. 178, 620 A.2d 456 (Law Div. 1992), plaintiffs brought an action in the U.S. District Court for the Eastern District of Pennsylvania. However, they excluded certain defendants from the suit. Subsequent thereto, plaintiffs filed an action in the Superior Court of New Jersey against different defendants than those named in the federal action. The pleadings filed in the state suit were identical with respect to the subject matter of the pleadings in the federal action. The Court determined that the entire controversy doctrine barred plaintiffs' state court suit and dismissed the second state court action with prejudice. The Court reasoned that:
The Court is satisfied that plaintiffs knew of their causes of action against the moving parties at least as early as the filing date of the federal action and certainly when they amended that complaint.... The Court is also satisfied that the subject matter is identical in both suits and that plaintiffs affirmatively chose to bifurcate from the federal action trial of the causes against the New Jersey defendants despite this fact.
[Id. at 183, 620 A.2d 456].
The holding in Mortgageling, supra, appears to be consistent with New Jersey case law and the evolving application of the entire controversy doctrine which was articulated by the New Jersey Supreme Court in Ajamian v. Schlanger, 14 N.J. 483, 103 A.2d 9, cert. denied 348 U.S. 835, 75 S.Ct. 58, 99 L.Ed. 659 (1954). Justice Brennan, in Ajamian, outlined the underlying concept of the entire controversy doctrine as:
The just and expeditious determination in a single action of the ultimate merits of an entire controversy between litigants. It is a fundamental objective of this procedural reform to avoid the delays and wasteful expense of the multiplicity of litigation which results from the splitting of a controversy.
[Id. 14 N.J. at 485, 103 A.2d 9].
As case law evolved, Judge Pressler in Wm. Blanchard v. Beach Concrete Co., Inc., 150 N.J. Super. 277, 375 A.2d 675 (App.Div. 1977), concluded:
The application of the doctrine requires that a party who has elected to hold back from the first proceeding a related component of the controversy be barred from thereafter raising it in a subsequent proceeding. It is only that bar which can effectively prevent the evil of `... piecemeal litigations of fragments of a single controversy.' [Citations omitted].
[Id. at 292-93, 375 A.2d 675].
The point, of course, is that a component of the controversy may not be unfairly withheld, ... [citation omitted] and a withholding is by definition unfair if its effect is to render the pending litigation merely one inning of the whole ball game.
[Id. at 294, 375 A.2d 675].
*623 Thereafter, the Supreme Court extended the application of the entire controversy doctrine to party joinder in Crispin v. Volkswagonwerk, A.G., 96 N.J. 336, 476 A.2d 250 (1984). In Crispin the Supreme the Court stated:
Where a litigant knows of a potentially responsible party, and has already sued that party in another action, the principles that underlay the entire controversy doctrine should come into play. A party should not be permitted to maintain such independent action when a directly related suit is pending.
[Id. at 343, 476 A.2d 250].
Justice Handler said in his concurring opinion that:
Plaintiffs' counsel's fragmentation of the controversy and tactical maneuvers have traduced the doctrine's goals of judicial conservation, fairness to litigants, avoidance of confusion and uncertainty, and assurance of just results. His actions cannot be reconciled with the strong policy of single litigation encompassed by the entire controversy doctrine.
[96 N.J. at 355, 476 A.2d 250.]
Thereafter, in Cogdell v. Hospital Center at Orange, 116 N.J. 7, 560 A.2d 1169 (1989), the Supreme Court further advanced the entire controversy doctrine to include party joinder, in the same manner and to the same extent, that it had previously been applied to claims joinder.
Justice Handler, writing for the majority said:
The purpose of the doctrine include the needs of economy and the avoidance of waste, efficiency and the reduction of delay, fairness to parties, and the need for complete and final disposition through the avoidance of `piecemeal decisions.'
[Id. at 15, 560 A.2d 1169.]
* * * * * * * *
Judicial economy and efficiency  the avoidance of waste and delay  remain constants in the application of the entire controversy doctrine. Fragmented and multiple litigation takes its toll on not only the parties but the judicial institution and the public. This, if anything, is a more pressing concern today than it was in the past. The litigation explosion stretches judicial capabilities enormously and places extraordinary demands on the courts. These concerns have impelled the Court to pursue novel and creative measures to cope with the increase in caseloads. We are importuned to conserve judicial resources; judicial energy is not inexhaustible or endlessly renewable. Thus, a rule that can control litigational extravagance and reduce piecemeal litigation is a necessity.
 [Cogdell, supra, 116 N.J. at 23-24, 560 A.2d 1169
 (footnotes omitted)].
*624 The Court, in its analysis of the development of the entire controversy doctrine, reasoned that "the doctrine has continually evolved through the common-law so that it currently encompasses a mandatory joinder rule for joinder of virtually all causes, claims and defenses relating to a controversy between the parties engaged in litigation." [Id. at 25, 560 A.2d 1169]. Importantly, the Court considered whether the doctrine should be extended to require party inclusion:
All of the concerns that have energized our joinder rules under the entire controversy doctrine coalesce in the circumstances of this case. Thus, there can be little doubt that the participation of all potentially responsible persons as parties in the original action would have resulted in a fuller and fairer presentation of the relevant evidence and complete determination of liability. It would have assured an ultimate determination that would be comprehensive, just and conclusive as to all persons implicated in the controversy.
* * * * * * * *
In sum, the failure to have joined these defendants in the earlier lawsuit is more than an unfortunate inconvenience. It is inconsistent with all of the policies that surround the entire controversy doctrine.
[Id. at 26, 560 A.2d 1169].
We thus conclude that the entire controversy doctrine appropriately encompasses the mandatory joinder of parties. Accordingly, we now hold that to the extent possible courts must determine an entire controversy in a single judicial proceeding and that such a determination necessarily embraces not only joinder of related claims between the parties but also joinder of all persons who have a material interest in the controversy.
[Id. at 26, 560 A.2d 1169].
Thus, there can be little doubt that plaintiffs have violated the principles of law as established in this state in that the entire controversy doctrine appropriately includes the mandatory joinder of parties. Indeed, plaintiffs have done no more than reiterate the allegations contained in the Federal Action and include them in the state court complaint. In sum, plaintiffs have fragmented their claims and as a result they have violated the policies of the entire controversy doctrine.
Needless to say, plaintiffs are clearly in control of their litigation. Accordingly, they cannot benefit from a fragmentation of the litigation in an effort to tactically maneuver out any of the defendants, especially when the plaintiffs "had sufficient information *625 to have included these defendants in the earlier law suit" Cogdell, supra at 25, 560 A.2d 1169.
With respect to the issue of whether or not this court should apply the decision in Mortgageling v. Commonwealth Land Title, 262 N.J. Super. 178, 620 A.2d 456 (Law Div. 1992), to this case, the Court finds its guidance from the well established case law of this state. Generally, judicial decisions will be applied to all pending cases. As set forth in Rutherford Education Association v. Board of Education, 99 N.J. 8, 21, 489 A.2d 1148, "... there is a presumption in favor of retrospectivity, and that presumption can be overcome only by a clear demonstration in a particular case that there are sound policy reasons for according a judicial decision prospective application only." Cogliati v. Ecco High Frequency Corp., 181 N.J. Super. 579, 583, 439 A.2d 91 (App.Div. 1981). "The threshold question in any retroactivity decision is whether a new rule of law has actually been announced." Rutherford, 99 N.J. at 21, 489 A.2d 1148.
The principles of prospective application were espoused by the Supreme Court in Chevron Oil Company v. Huson, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971) and again taken up in Coons v. American Honda Motor Co., 96 N.J. 419, 476 A.2d 763 (1984), cert. denied, 469 U.S. 1123, 105 S.Ct. 808, 83 L.Ed.2d 800 (1985):
"... for a decision to be applied non-retroactively, it is sufficient that it established a new principle of law, `either by overruling clear past precedent on which litigants may have relied * * * or by deciding an issue of first impression whose resolution was not clearly foreshadowed.'" Id. at 431-432, 476 A.2d 763.
In addition, our Supreme Court in Gregoletti v. Ortho Pharmaceutical Corporation, 118 N.J. 89, 116, 570 A.2d 903 (1990) stated:
We have always understood that decisions establishing a new principle of law by overruling past precedent or resolving an issue of first impression in a way not foreshadowed by past decisions should not be granted retroactive application. Merenoff v. Merenoff, 76 N.J. 535, 560, 388 A.2d 951 (1978) (interspousal tort immunity does not bar personal injury suits between married persons but, "in view of the significant change in the law," the decision should be prospective only). If application of the decision clearly upsets the settled order of things and results in unfair surprise and hardship, this would be a tell tale that it ought to be given only prospective effect. Darrow v. Hanover Township, 58 N.J. 410, 420, 278 A.2d 200 (1971) ("Prospectivity can avoid unsettling the past and serve as an encouragement *626 for judicial creativity.") Accord Coons [v. American Honda Motor Co., Inc.], 96 N.J. 419, 476 A.2d 763.
Moreover, the Appellate Division also considered the prospective-only application of party-joinder with respect to the entire controversy doctrine in Reno Auto Sales, Inc. v. Prospect Park S & L, 243 N.J. Super. 624, 581 A.2d 109 (App.Div. 1990). The Appellate Division held that the decision in Cogdell would not bar a second action against parties who were not joined in an earlier action only if the prior action was pending at the time Cogdell was decided. The court held, however, that Cogdell would be applicable to bar a second action when the first action was filed after Cogdell.
The Court stated:
Thus, we conclude ... that the Supreme Court intended the new mandatory party-joinder rule to apply only where the first level litigation was pending and not on appeal at the time Cogdell was decided. Such interpretation fulfills the Court's intention to apply the rule prospectively by affording claimant's (sic) in that class the opportunity, post Cogdell, to amend their pleadings to conform with the mandate of the rule.
We believe our interpretation is further buttressed by the Court's unwillingness to apply the rule to cases on appeal at the time of its decision. It appears to us that the reason for exempting such cases from the application of the rule was a recognition by the Court that the claimants in such cases could not move to amend their pleadings while their cases were on appeal. On the other hand, the application of the Cogdell rule to second level cases pending at the time of the decision, but not to second level litigation cases on appeal, makes no practical sense. Id. at 630, 581 A.2d 109.
At the time plaintiffs filed their Federal Action the issue of party-joinder, with respect to the entire controversy doctrine, had already been decided; namely, according to Cogdell, party-joinder aspects of the entire controversy doctrine should be applied to any case commenced after Cogdell. Such is the case with plaintiff's action in this matter. Thus, although this Court is not bound by the decision in Mortgageling, it is nonetheless appropriate that Mortgageling should be applied based upon case law as set forth herein.
The Mortgageling decision rests upon (1) the recognition that the entire controversy doctrine applies to omitted parties as well *627 as claims; and (2) the application of the doctrine to a Superior Court action which was filed after the first action in another forum, (the filing of a suit in Eastern District of Pennsylvania precluded a subsequent suit in New Jersey state court).
Both Cogdell, supra, and Guidice, supra, were cited and relied on by the court in rendering its decision in Mortgageling. It cannot be clearly demonstrated here that there are sound policy reasons for according prospective-only application of Mortgageling. The Court's ruling in that case neither overruled a decision nor did it impact on past precedent. The decision was not an abrupt change from prior law nor did it resolve any issues of first impression in a way not foreshadowed by prior decisions. Accordingly, it is clear that the rationale in Mortgageling should be afforded application here.
Plaintiffs rely on Burrell v. Quaranta, 259 N.J. Super. 243, 612 A.2d 379, (App.Div. 1992) for the proposition that the entire controversy doctrine cannot bar the State Action because all of the litigants in the State Action had knowledge of the Federal Action before any possible prejudice could occur. The Court however, is of the opinion that the facts of this case do not support this conclusion for the following reasons:
1. The assertions of the plaintiffs are that defendants were affirmatively advised of the Federal Action, or at the very least they should have known of its existence. It is obvious from the certifications of defendants, that at no time prior to the filing of plaintiff's Complaint in this matter, did defendants have knowledge of the Federal Action.
2. Further, plaintiffs violated the requirements of R. 4:5-1(b)(2) by failing to certify that this matter was not the subject of any other action pending in any other Court proceeding. Pursuant to R. 4:5-1(b)(2) a litigant is required to certify under oath that the "matter in controversy is not the subject of any other pending action in any other court or of a pending arbitration proceeding". (emphasis added). At the time that the State *628 Action was filed, the Federal Action was pending. Thus, on this separate basis, plaintiffs' complaint would be subject to dismissal. Tall Timbers Pr. Own. v. Tall Timbers, 217 N.J. Super. 119, 125, 524 A.2d 1315 (App.Div. 1987), overruled on other grounds, 116 N.J. 7, 560 A.2d 1169 (1989) (holding that violation of R. 4:5-1(b)(2) justifies dismissal); Mortgageling, 262 N.J. Super. at 186, 620 A.2d 456 (R. 4:5-1(b)(2) is not a mere "technical requirement," but rather falls squarely within the four corners of the entire controversy doctrine).
How can it then be said that plaintiffs have comported with the dictates of Burrell, supra, wherein Judge Long stated:
Underlying the entire controversy doctrine are the twin goals of efficient judicial administration and fairness to litigants. In the modern era of litigation, particularly in the tort field with the advent of comparative negligence, it is highly desirable that all parties with a material interest, one that can affect or be affected by the judicial outcome of a legal controversy, should participate in its litigation. Requiring parties to assert all claims in the initial litigation enables each to "make a rational and complete appraisal of its position . ." at the outset. The doctrine prevents harassment of litigants and promotes speedy resolution of controversies ... Having said this, we do not suggest the doctrine requires application regardless of the equity of an individual situation. On the contrary, the entire controversy doctrine is "one of judicial fairness and will be invoked in that spirit."
 [Id. at 248-249, 253, 612 A.2d 379 (citations
 omitted)].
Consequently, what occurred in this matter is not supported by the decision in Burrell, supra. Judicial economy was not preserved nor fairness to litigants demonstrated by reason of the fact that plaintiffs withheld parties from the Federal Action that were subsequently named in the State Action.
Finally, plaintiffs also suggest that it would have been improper for them to have brought the State Court defendants into the Federal Action based upon the theory that the Federal District Court would not have had supplemental jurisdiction over their claims against the defendants. They reason that the Federal Action against Car Checkers involves a violation of the federal RICO statute; and that as such, the federal claims against the defendants in the State Action are not "so related" to the RICO claim so as to confer supplemental jurisdiction.
*629 Plaintiffs contend that supplemental jurisdiction does not arise because the Federal Action is not related to the State claims. Federal district courts may decline to exercise supplemental jurisdiction over a claim under 28 U.S.C. § 1367(a) for the following reasons: (1) the claim raises a novel or complex issue of state law; (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction; (3) the district court has dismissed all claims over which it has original jurisdiction; or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.
Pursuant to 28 U.S.C. § 1331, subject matter jurisdiction in the Federal Action was based on federal question jurisdiction; that is, the complaint in the Federal Action contained a federal RICO claim and plaintiff's federal complaint asserted federal question subject matter jurisdiction.
Under 28 U.S.C. § 1367(a)(1990), the federal district court has supplemental jurisdiction over related state law claims and parties whenever jurisdiction is based, at least in part, on federal question jurisdiction. The pertinent part of the statute provides:
[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to the claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties. (28 U.S.C. § 1367(A)) (emphasis added).
Section 1367(b) states that a district court does not have supplemental jurisdiction under subsection (a) over additional parties when original jurisdiction has been founded solely on diversity jurisdiction under 28 U.S.C. § 1332. Because plaintiffs asserted a federal RICO claim against the district court defendants, and thus established federal question jurisdiction, Section 1367(b) is inapplicable. Similarly, Section 1367(c) of the statute permits the district court to decline to entertain the supplemental claims against the additional parties in situations which plainly do not apply to the present case.
*630 In addition, based upon the following decisions, supplemental jurisdiction in the present matter clearly exists:
In Tafflin v. Levitt, 493 U.S. 455, 467, 110 S.Ct. 792, 799, 107 L.Ed.2d 887, 900 (1990), the United States Supreme Court held that state courts had concurrent jurisdiction to hear civil claims under the federal RICO statute. In addition, see Munson v. Milwaukee Board of School Directors, 969 F.2d 266, 268 and n. 1 (7th Cir.1992); Meritor Savings Bank v. Camelback Canyon Investors, 783 F. Supp. 455, 456-57, (D.Ariz. 1991); Corporate Resources, Inc. v. Southeast Suburban Ambulatory Surgical Center, Inc., 774 F. Supp. 503, 505-506 (N.D.Ill. 1991). Moreover, see in United Mine Workers v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), in which the Supreme Court held that the federal and state claims should "derive from a common nucleus of operative facts" such that it would "ordinarily be expected to try them in one judicial proceeding." 388 U.S. at 728, 86 S.Ct. at 1138, 16 L.Ed.2d at 229.
Accordingly, when plaintiffs filed their federal complaint in December 1991 and then subsequently amended their federal complaint in January 1992, the district court clearly had supplemental jurisdiction over the state cause of action against the additional defendants.
Based upon the stated considerations, the Court is completely satisfied that the plaintiffs' unfairly withheld from the Federal Action the defendants in the State Action. There are insufficient reasons to preclude the application of the entire controversy doctrine. Plaintiffs have fragmented their claims based upon identical events and transactions. The inescapable conclusion is that, where equity and justice require it, the entire controversy doctrine will be applied.
In addition, plaintiffs' violation of R. 4:5-1(b)(2) justifies dismissal of the State Action. An R. 4:5-1(b)(2) infraction is not a mere technical error but is a serious violation of the Court Rules and cannot be trivialized. Plaintiff's dubious assertions regarding "informal" compliance with the rule in no way can release the *631 plaintiffs of the rule's purpose and intent. (emphasis added). By failing to file a "Notice of Other Actions Certification", plaintiffs deprived the court of essential information, namely that another matter was pending involving the same subject matter as the State Action and that other parties should be joined in the action. The chilling effect of acknowledging informal compliance with R. 4:5-1(b)(2) is a further reason to read the rule strictly.
Moreover, although the issue is not free from absolute doubt, this court is satisfied that the federal court had supplemental jurisdiction over the claims against the State defendants under 28 U.S.C. § 1367 (1990) and as a result the State defendants should have been brought into the Federal Action. There is no basis for a claim that the Federal Action does not arise out of the same operative facts as the State Action against these defendants.
In conclusion, the court holds that the defendants are entitled to summary judgment and plaintiffs' complaint is dismissed.