259 N.J. Super. 243 (1992)
612 A.2d 379
MCKINLEY BURRELL, PLAINTIFF-APPELLANT,
v.
TINA QUARANTA, FRANK VIGGIANO, VINCENT DICIACCO, NATIONAL FREIGHT, INC., HOUSANG KAVEH, TOWNSHIP OF MAPLE SHADE, METCALF AND EDDY, JOHN DOE, A BUSINESS ENTITY OR CORPORATION WHICH IS PRESENTLY UNKNOWN, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Submitted May 27, 1992.
Decided September 4, 1992.
*245 Before Judges ANTELL, LONG and THOMAS.
Michael J. Piarulli, attorney for appellant.
Tomlin, Clark & Hopkin, attorneys for respondents Township of Maple Shade and Metcalf and Eddy (William R. Hopkin, Jr., on the brief).
Capehart & Scatchard, attorneys for respondent Tina Quaranta (Bruce A. Wallace, III, on the brief).
Green, Lundgren & Ryan, attorneys for respondent Housang Kaveh (Daniel J. Distasi, on the letter brief).
Hack, Piro, O'Day, Merklinger, Wallace & McKenna, attorneys for respondents National Freight, Inc. and Vincent DeCiacco, *246 have filed a letter of non-participation (William J. O'Day, on the letter).
The opinion of the court was delivered by LONG, J.A.D.
On January 14, 1989, the Maple Shade Sewage Treatment Plant spilled liquid onto the northbound lanes of Route 73, where it froze, causing several motor vehicle accidents. The first occurred around 9 a.m., when Vincent DiCiacco, driving a vehicle owned by National Freight, Inc., passed Tina Quaranta, who was driving Frank Viggiano's car. The ice caused DiCiacco's vehicle to spin in front of Quaranta's, following which Quaranta struck the right side of DeCiacco's car. Quaranta got out of the car to discuss the situation with DiCiacco, when McKinley Burrell, whose automobile also lost control on the ice, crashed into Quaranta's vehicle, which then struck Quaranta. Housang Kaveh's vehicle subsequently slid on the ice and collided with Burrell's vehicle. Burrell was taken to a nearby hospital where he received emergency treatment for high blood pressure.
In May 1989, Quaranta filed a personal injury complaint against DiCiacco, National Freight, Kaveh, Burrell, the Township of Maple Shade (Township) and Metcalf & Eddy, which had contracted with the Township to operate the sewage treatment plant. Burrell, who was insured by Allstate, turned the matter over to the carrier. Allstate selected John Spence to represent Burrell in Quaranta's suit. Spence filed an answer and a cross-claim for contribution against the other defendants in the Quaranta action. According to Burrell, "similar answers and cross-claims were filed among the various parties."
In August 1989, Burrell's privately retained attorney sent him to a physician for an evaluation of the injuries he sustained in the accident. The physician opined that:
[T]he patient has an ongoing left shoulder injury which is post-traumatic in nature secondary to his motor vehicle accident of 1/14/89. As noted in my final *247 report, further treatment and/or surgical intervention was discussed with the patient. His MRI of May 30, 1989, revealed a large rotator cuff tear. It is my opinion that this cuff tear will not heal spontaneously and that at some point in time, the patient will, with all probability, require surgical treatment due to continued symptoms and/or progressive tear to his rotator cuff.
Following an arbitration hearing on July 13, 1990, the parties (with the exception of Kaveh who had been granted summary judgment), reached a settlement with Quaranta. The record does not reveal the amount of the settlement. Apparently however, the bulk of it was paid by the Township and Metcalf & Eddy, who were responsible for creating the ice on Route 73. The stipulation of dismissal with prejudice, dated August 15, 1990, and filed November 21, 1990, is signed by Spence, suggesting that Allstate, on behalf of Burrell, contributed something to the settlement.
Burrell filed this personal injury action on September 19, 1990, after the settlement in Quaranta. All of the parties listed as defendants in Burrell's complaint were also parties in the Quaranta action, except Frank Viggiano. All parties answered with the exception of Metcalf & Eddy. DiCiacco, National Freight, and Kaveh moved for summary judgment which motions were granted by the trial judge on the basis of the entire controversy doctrine. The remaining defendants then moved for summary judgment. The trial judge granted the motions on entire controversy grounds except as to Viggiano who was not a party to the Quaranta action.
Burrell moved for reconsideration. Before that motion was resolved, Burrell filed a notice of appeal from the summary judgments, which were then interlocutory because of the pendency of the case against Viggiano. Thereafter, Burrell dismissed his action against Viggiano and filed an amended notice of appeal. The trial judge subsequently denied the motion for reconsideration. At that point the matter was final.
On this appeal, Burrell argues as to all defendants that the entire controversy doctrine should not have been applied and, as to Maple Shade only, that by its conduct and its *248 failure to raise entire controversy as an affirmative defense, it should have been precluded from invoking that doctrine. We disagree and affirm.
The entire controversy doctrine requires a party to an action to assert all claims which he or she may have against any other party in order to preserve the claims. Cogdell v. Hospital Center at Orange, 116 N.J. 7, 15, 560 A.2d 1169 (1989); Woodward-Clyde v. Chemical and Pollution Sciences, Inc., 105 N.J. 464, 473, 523 A.2d 131 (1987). After Cogdell, the entire controversy doctrine was expanded to require mandatory joinder of parties as well as claims. This change is reflected in the current court rules. R. 4:30A. However, the joinder-of-parties requirement of Cogdell is inapplicable here because Cogdell was decided and the rule was adopted after suit was filed in the Quaranta case.
The controlling court rule prior to Quaranta's initial complaint was R. 4:27-1(b), which stated: "[e]ach party to an action shall assert therein all claims which he may have against any other party thereto insofar as may be required by application of the entire controversy doctrine." The term "claims" in the rule includes counterclaims and crossclaims. R. 4:7-1; R. 4:7-5(a). See Woodward-Clyde, supra, 105 N.J. at 472-73, 523 A.2d 131 (mandatory counterclaim); William Blanchard Co. v. Beach Concrete Co., Inc., 150 N.J. Super. 277, 292-94, 375 A.2d 675 (App.Div. 1977), certif. denied, 75 N.J. 528, 384 A.2d 507 (1977) (mandatory cross-claims).
"Underlying the entire controversy doctrine are the twin goals of efficient judicial administration and fairness to litigants." Woodward-Clyde, supra, 105 N.J. at 472, 523 A.2d 131. In the "modern era of litigation, particularly in the tort field with the advent of comparative negligence, it is highly desirable that all parties with a material interest, one that can affect or be affected by the judicial outcome of a legal controversy, should participate in its litigation." Cogdell, supra, 116 N.J. at 23, 560 A.2d 1169. Requiring parties to assert all claims *249 in the initial litigation enables each to "make a rational and complete appraisal of its position ..." at the outset. William Blanchard Co., supra, 150 N.J. Super. at 295, 375 A.2d 675. The doctrine prevents harassment of litigants and promotes speedy resolution of controversies. Woodward-Clyde, supra, 105 N.J. at 472, 523 A.2d 131.
The doctrine is also essential to conserve judicial resources:
Judicial economy and efficiency  the avoidance of waste and delay  remain constants in the application of the entire controversy doctrine. Fragmented and multiple litigation takes its toll on not only the parties but the judicial institution and the public. This, if anything, is a more pressing concern today than it was in the past. The litigation explosion stretches judicial capabilities enormously and places extraordinary demands on the courts. These concerns have impelled the Court to pursue novel and creative measures to cope with the increase in case loads. We are importuned to conserve judicial resources; judicial energy is not inexhaustible or endlessly renewable. Thus, a rule that can control litigational extravagance and reduce piecemeal litigation is a necessity. [Cogdell, supra, 116 N.J. at 23-24, 560 A.2d 1169 (footnotes omitted)].
On appeal, Burrell principally contends that the entire controversy doctrine should not apply where, as here, a plaintiff is represented in the initial action by an attorney selected by his or her automobile liability carrier. He reasons that the carrier is the real party in interest in defending the first law suit, while the injured person is the real party in interest in pursuing the second suit. Burrell cites Humble Oil & Refining Co. v. Church, 100 N.J. Super. 495, 242 A.2d 652 (App.Div. 1968) which he views as the primary authority on this issue.
Humble Oil arose out of a collision between plaintiff's truck and two automobiles. The accident caused the death of a passenger in one of the vehicles, and her estate brought suit which ultimately settled. Humble Oil's liability carrier contributed toward the settlement. Humble Oil then filed suit against the drivers of the automobiles to recover for damage to its truck. The trial court dismissed, in part, because Humble Oil could have asserted its property damage claim in the passenger's wrongful death suit. We reversed, primarily because the liability carrier had control over the passenger's lawsuit. Id. at *250 498-99, 242 A.2d 652. In rejecting the trial judge's reliance on the entire controversy doctrine, we stated:
A property damage claim, a personal injury claim and a claim for contribution under the Joint Tortfeasors Contribution Law constitute separate claims for relief even though they all arise by reason of one tortious incident. Joinder of such claims is permissive, not mandatory. [100 N.J. Super. at 500, 242 A.2d 652 (citations omitted)].
Despite this broad language, the result in Humble Oil is not inconsistent with the entire controversy doctrine, as refined in later decisions. The key factual distinction is that Humble Oil brought its property damage claim nearly two years before its carrier and the carrier for the other culpable party settled the wrongful death suit. 100 N.J. Super. at 497, 242 A.2d 652. Thus, all parties knew of all claims prior to resolution of the first case. Analogously, our courts have held that the entire controversy doctrine does not preclude a party from re-asserting a claim previously dismissed without prejudice, either because the claimant violated the rules of discovery, Woodward-Clyde, supra, 105 N.J. at 473, 523 A.2d 131, or because a federal court had no jurisdiction over the claim. Milone v. Nissan Motor Corp., 250 N.J. Super. 371, 375-76, 594 A.2d 642 (App.Div. 1991). To satisfy the entire controversy doctrine, a party need only assert the claim. Woodward-Clyde, supra, 105 N.J. at 473, 523 A.2d 131. By timely asserting a claim, even if not joined in the same action, a party can fulfill the goals of the entire controversy doctrine. Other parties are on notice that the claim exists before they take any action with respect to the first claim, and the court, if it desires, can consolidate. That is not possible where the initial claim has been disposed of before the second is asserted.
The viability of the broad holding of Humble Oil also remains to be addressed. The roots of Humble Oil can be found in a series of cases decided prior to adoption of the Constitution of 1947 which allowed splitting causes of action irrespective of whether the first claim had been resolved before the second was filed. See Sodowich v. Heimert, 108 N.J.L. 59, 154 A. 609 (Sup.Ct. 1931), aff'd o.b., 109 N.J.L. 265, 160 A. 635 (E. & *251 A. 1932); Smith v. Fischer Baking Co., 105 N.J.L. 567, 147 A. 455 (E. & A. 1929); Ochs v. Public Service Railway Co., 81 N.J.L. 661, 80 A. 495 (E. & A. 1911). See also Smith v. Red Top Taxicab Corp., 111 N.J.L. 439, 441, 168 A. 796 (E. & A. 1933). In Ochs, which established this proposition, plaintiff recovered for damages to his horse and buggy, then brought suit and recovered for his personal injuries. 81 N.J.L. at 662, 80 A. 495. The Supreme Court had reversed the judgment in the personal injury action on the ground that "all injurious results from a single negligent act constitute but one cause of action" and must be joined in one proceeding. Ibid. This was an issue of first impression in New Jersey. On further appeal, the Court of Errors and Appeals, our then highest court, noting a split in other jurisdictions, held that there were two distinct causes of action, as indicated by separate limitations periods and different rules of assignability, and that "a judgment in one cause is not a bar to an action to recover in the other." Id. at 633, 80 A. 495.
In Reardon v. Allen, 88 N.J. Super. 560, 213 A.2d 26 (Law Div. 1965), Judge Botter, then a trial judge, questioned Ochs in favor of the majority rule that a person who has a claim for property damage and personal injuries arising simultaneously should be required to join both claims in one action:
[T]he policy of avoiding multiple litigation by joining in one action all claims arising out of a single transaction strongly recommends that the result in Ochs should be repudiated. The question is not simply whether an act of negligence gives rise to one or two causes of action where both personal injuries and property damage occur. The question is, given two causes of action arising simultaneously in favor of one person against another, should the claimant be required to sue for both claims in the first action. Efficient judicial administration normally requires that "all facets of a single dispute between parties be completely determined in one action." [88 N.J. Super. at 563, 213 A.2d 26 (citations omitted)].
The Appellate Panel in Humble Oil, however, considered itself bound by the rule in Ochs, supra, and disagreed with Judge Botter's analysis:
The rule of the Ochs case has been adhered to in the later decisions of our highest court cited supra, with full realization that the rule in a number of *252 other states is to the contrary. See Smith v. Red Top Taxicab Corp., supra, 111 N.J.L., at p. 441 [168 A.2d 796].
The Ochs rule is the law of this State. We as an intermediate appellate court are bound by it. Bacon v. Atlantic City Transp. Co., 72 N.J. Super. 541, 547 [178 A.2d 654] (App.Div. 1962), affirmed o.b., 38 N.J. 529 [186 A.2d 112] (1962). Further, we do not agree with the suggestion in Reardon v. Allen, 88 N.J. Super. 560, 563 [213 A.2d 26] (Law Div. 1965), that the rule of Ochs should be modified or repudiated. [100 N.J. Super. at 500, 242 A.2d 652].
We disagree with the panel in Humble Oil which concluded that Ochs is still good law. Even when Humble Oil was decided, the entire controversy doctrine, as it had evolved, would have prohibited a party from suing for property damage, trying that suit to conclusion and then bringing a separate suit for personal injury. While, as a general rule, we are bound by the decisions of the State's highest courts, including the Court of Errors and Appeals, an exception exists where more recent decisions of the Supreme Court clearly undermine the authority of a prior decision, although not expressly overruling it. See, e.g., Kass v. Brown Boveri Corp., 199 N.J. Super. 42, 53, 488 A.2d 242 (App.Div. 1985); State v. Ciuffini, 164 N.J. Super. 145, 152, 395 A.2d 904 (App.Div. 1978). That is the situation here. See Cogdell, supra, 116 N.J. at 16, 560 A.2d 1169; Woodward-Clyde, supra, 105 N.J. at 472, 523 A.2d 131; Aetna Ins. Co. v. Gilchrist Brothers, Inc., 85 N.J. 550, 556, 428 A.2d 1254 (1981); Ajamian v. Schlanger, 14 N.J. 483, 485, 103 A.2d 9 (1954), cert. denied, 348 U.S. 835, 75 S.Ct. 58, 99 L.Ed. 659 (1954); Massari v. Einsiedler, 6 N.J. 303, 307, 78 A.2d 572 (1951). We thus hold the entire controversy doctrine fully applicable to Burrell's lawsuit.
We turn next to the question of whether there are circumstances in which a litigation like Burrell's may go forward in the face of the entire controversy bar. Burrell argues that it would be unjust to bind him to the initial action in which the insurance company was the true party in interest. There are several problems with this analysis. First, Burrell's argument that a tortfeasor and his liability carrier are separate parties in a negligence action is not accurate. Normally, the *253 proper defendant in a negligence action is the alleged tortfeasor, not the tortfeasor's liability carrier. See Manukas v. American Ins. Co., 98 N.J. Super. 522, 524, 237 A.2d 898 (App.Div. 1968). Quaranta sued Burrell, not Allstate. Allstate had a fiduciary duty to represent its insured. Lieberman v. Employers Ins. of Wausau, 84 N.J. 325, 336, 419 A.2d 417 (1980). See Rova Farms Resort, Inc. v. Investors Ins. Co. of America, 65 N.J. 474, 492, 323 A.2d 495 (1974). That means Allstate had to put Burrell's interests ahead of its own, Lieberman, supra, 84 N.J. at 336, 419 A.2d 417, although here there was no conflict. Likewise Spence, the attorney selected by Allstate to represent Burrell, was Burrell's attorney. Id. at 338, 419 A.2d 417. Spence was obligated to protect and promote Burrell's interests to the same extent as he would if he were personally hired by and paid by Burrell. Id. at 338-39, 419 A.2d 417. Thus, Burrell's suggestion that there was no identity of interest between him and the insurance company in Quaranta's suit is incorrect.
Having said this, we do not suggest the doctrine requires application regardless of the equity of an individual situation. On the contrary, the entire controversy doctrine is "one of judicial fairness and will be invoked in that spirit." Crispin v. Volkswagenwerk, A.G., 96 N.J. 336, 343, 476 A.2d 250 (1984). Accord, Cogdell, supra, 116 N.J. at 27, 560 A.2d 1169; Cafferata v. Peyser, 251 N.J. Super. 256, 261, 597 A.2d 1101 (App.Div. 1991); Milone, supra, 250 N.J. Super. at 376, 594 A.2d 642; Reno Auto Sales, Inc. v. Prospect Park Savings and Loan Assoc., 243 N.J. Super. 624, 630, 581 A.2d 109 (App. Div. 1990). Cafferata v. Peyser, supra, is illustrative. There, an association of physicians sued plaintiff in the Special Civil Part to collect a small unpaid bill. 251 N.J. Super. at 257, 597 A.2d 1101. Plaintiff's health insurer paid the bulk of the bill, and plaintiff, appearing pro se, settled the action in the Special Civil Part by paying the physicians an additional $160.80. In the meantime, plaintiff consulted other physicians and was ultimately advised that two of the doctors who sued him for *254 their fee may have been guilty of malpractice in performing his surgery. Plaintiff subsequently instituted a malpractice action. The trial judge dismissed plaintiff's complaint on the ground that the entire controversy doctrine required him to assert his claim in the medical association's collection action in the Special Civil Part. Id. at 259-60, 597 A.2d 1101.
In reversing, we held it would clearly be inequitable to preclude the claim. Judge Pressler, speaking for the court, reasoned: "as in the case of all other preclusionary doctrines, its application requires, as a matter of first principle, that the party whose claim is being sought to be barred must have had a fair and reasonable opportunity to have fully litigated that claim in the original action." Id. at 261, 597 A.2d 1101. The minor nature of the collection action, plaintiff's appearance pro se, and the absence of any judicial involvement in the settlement of that action all militated against barring a potentially significant personal injury claim. Id. at 261-62, 597 A.2d 1101. In short, where equity and justice require it, the entire controversy doctrine will not bar a second suit arising out of the same facts.
This case does not present the equities demonstrated in Cafferata. Here, Burrell was aware of Quaranta's action and of his representation by Spence, the lawyer engaged by the carrier. He was also on notice of the nature and extent of his injuries as a result of an evaluation by a physician (to whom he was sent by his private attorney) almost a year prior to the settlement of the Quaranta action. He does not contend the Quaranta case was settled without his knowledge or authority. He was represented by two attorneys simultaneously during the period in which the Quaranta case was pending  Spence and his personal attorney, Piarulli, who ultimately filed the second case. If he was not advised by one or both of these attorneys that he should join his affirmative claim in defending the Quaranta action or risk its loss altogether, his remedy is with them. Strauss v. Fost, 209 N.J. Super. 490, 498, 507 A.2d 1189 (App.Div. 1986) (the attorney selected by plaintiff's liability *255 carrier guilty of negligence as a matter of law in not pressing property damage claim). See Lieberman, supra, 84 N.J. at 339, 419 A.2d 417. Nothing in this case warrants relief from the entire controversy bar. Indeed, if we were to hold that this multiple vehicle accident case is an exception to the entire controversy doctrine, it would be an exception which swallows the doctrine whole. This we will not allow.
Finally, Burrell contends that even if the entire controversy doctrine was properly invoked with respect to the other defendants, the Township was not entitled to its protection. First, Burrell claims that the Township's failure to include entire controversy in its initial response forever foreclosed it from that defense. There are several answers to this: the entire controversy doctrine was asserted in a later pleading by the Township; it was raised by other defendants, thus eliminating the possibility that Burrell was surprised or prejudiced by its allowance as to the Township; it was raised by Metcalf & Eddy, whose indemnification agreement required it to defend the Township; and as the trial judge held, if asked, she would have permitted the Township to amend the answer to assert the defense pursuant to R. 4:9-1. There is thus no warrant for our intervention on this issue.
Next, Burrell contends that the Township should be estopped from asserting the entire controversy doctrine because it settled the Viggiano and Kaveh cases in which the entire controversy doctrine could have been raised as a defense. Not so. Estoppel requires some act or conduct by one party upon which another relies to detriment. Carlsen v. Masters, Mates & Pilots Pension Plan Trust, 80 N.J. 334, 339, 403 A.2d 880 (1979). This is entirely absent here. There is no evidence that Burrell relied upon the Township's conduct in the Viggiano and Kaveh cases. Indeed, he did not change his position at all as a result, let alone change it detrimentally. In short, the reliance element of estoppel is absent here.
*256 Burrell's final suggestion is that the Township waived its right to assert the doctrine as a defense by its inequitable conduct. This is equally misplaced. Waiver is the intentional relinquishment of a known right and there is simply no indication from this record that the township intended to waive the entire controversy doctrine as a defense. See West Jersey Title and Guaranty Co. v. Industrial Trust Co., 27 N.J. 144, 152, 141 A.2d 782 (1958).
Affirmed.