278 N.J. Super. 439 (1995)
651 A.2d 486
MARION C. STEBBINS, PLAINTIFF, AND JOSEPH L. STEBBINS, PLAINTIFF-RESPONDENT,
v.
DANIEL D. ROBBINS, DEFENDANT-APPELLANT, AND ZINMAN FURS, INC., DEFENDANT.
Superior Court of New Jersey, Appellate Division.
Argued September 26, 1994.
Decided January 12, 1995.
*441 Before Judges HAVEY, BROCHIN and CUFF.
Phyllis Coletta argued the cause for appellant (Megargee, Youngblood, Franklin & Corcoran, attorneys; Ms. Coletta, on the brief).
Edward R. Doughty argued the cause for respondent (Mr. Doughty, on the brief).
The opinion of the court was delivered by CUFF, J.S.C. (temporarily assigned).
This case arises from an automobile accident which occurred on July 17, 1989 in Atlantic City and spawned four lawsuits. The sole issue on appeal is whether the entire controversy doctrine bars this fourth and final action.
On July 17, 1989, plaintiff Joseph Stebbins was the operator of a jitney bus in which his wife Marion and ten others were passengers. Defendant Daniel Robbins, the driver of a jeep owned by defendant Zinman Furs, Inc., ran a red light and struck the jitney.
On April 26, 1990, passenger Bobby Skinner filed suit against Joseph Stebbins, Daniel Robbins and Zinman Furs. On September 12, 1990, an answer on behalf of Stebbins was filed by the attorney assigned to defend him by his insurance company. A cross-claim for contribution and indemnification against Robbins and Zinman Furs was filed; no affirmative claim was asserted in this action on behalf of Stebbins.
On July 17, 1990, passenger Thomas Clisham filed suit against the same defendants. An answer was filed on Stebbins' behalf by the same attorney on October 22, 1990. A cross-claim for contribution and indemnification against Robbins and Zinman Furs was filed; no affirmative claim was asserted in this action on behalf of Stebbins. A third complaint was filed by passenger Robert *442 Danley against the same defendants on July 27, 1990. On September 14, 1990, the Skinner and Clisham complaints were consolidated. Before Stebbins could file an Answer, a stipulation of dismissal was entered in the Danley matter on September 24, 1990. Then, on October 2, 1990, a stipulation of dismissal was filed in the Skinner case. Each lawsuit was venued in Atlantic County.
Approximately two weeks after the accident, Stebbins and his wife retained personal counsel to represent them in their personal injury claims arising from the accident. Personal counsel then contacted defendants' insurance company to inform them of his representation. Between September 18, 1989 and June 26, 1991 (a period of twenty-one months), Stebbins' personal counsel sent seventy-eight letters to defendants' insurance company with hundreds of medical bills, medical reports, medical records and other information.
Initially, Stebbins believed that his neck injury was a severe cervical strain or sprain. His wife was also treating extensively for her injuries. On January 22, 1991, Stebbins was told for the first time that he had two herniated cervical disks. Since his personal counsel did not advise defendants' adjustor until June 4, 1991 that surgery was required, we assume that Stebbins learned of the need for surgery only shortly before then or approximately one month before his action was filed. On June 27, 1991, Joseph and Marion Stebbins filed their complaint against defendants Robbins and Zinman Furs for personal injuries sustained in the accident.
By this time the Skinner and Danley matters had been settled and the Clisham case had been subject to mandatory automobile arbitration on June 26, 1991. On June 28, 1991, Stebbins' insurance defense counsel wrote a letter confirming a settlement of the Clisham case. On July 1, 1991, the trial court was informed of the settlement and administratively dismissed the matter. Releases were executed on July 10, 1991 and the stipulation of dismissal was filed on August 8, 1991.
*443 Once Stebbins filed his complaint, defendants filed an answer, counterclaim and third party complaint against Stebbins. The attorney assigned by Stebbins' insurance company filed an answer to the counterclaim and third party complaint. Defendants then filed a motion for summary judgment based on the entire controversy doctrine. This motion was denied. Prior to trial, Marion Stebbins' claim was settled and the claim against Zinman Furs was dismissed. After a jury trial, a verdict was returned in favor of Joseph Stebbins in the amount of $345,116.94 plus pre-judgment interest. Defendant Robbins appeals. On appeal he argues that the Stebbins complaint is barred by the entire controversy doctrine.
The entire controversy doctrine requires all claims and all parties relevant to the litigation to be joined in a single proceeding. Cogdell v. Hospital Ctr. at Orange, 116 N.J. 7, 15, 560 A.2d 1169 (1989); Woodward-Clyde v. Chemical and Pollution Sciences, Inc., 105 N.J. 464, 523 A.2d 131 (1987). R. 4:30A reflects this doctrine. The entire controversy doctrine seeks to advance the twin goals of efficient judicial administration and fairness to litigants. Crispin v. Volkswagenwerk, A.G., 96 N.J. 336, 349, 476 A.2d 250 (1984), citing Thornton v. Potamkin Chevrolet, 94 N.J. 1, 8, 462 A.2d 133 (1983).
Wm. Blanchard Co. v. Beach Concrete Co., Inc., 150 N.J. Super. 277, 292-93, 375 A.2d 675 (App.Div.), certif. denied, 75 N.J. 528, 384 A.2d 507 (1977) suggests the analysis to be utilized to determine the applicability of the doctrine. An evaluation of each potential component of the litigation must be made to determine the consequences of omission of that component. If the litigants would have to engage in additional litigation to settle all rights and liabilities arising from a single occurrence, the omitted claim or party must be regarded as part of a mandatory unit of the litigation. Id. at 293-94, 375 A.2d 675. See Cogdell, supra, 116 N.J. at 15, 560 A.2d 1169.
Fairness to litigants, however, may require that the entire controversy doctrine should not apply to particular types of cases *444 or to particular claims. Thus, the Court has recently amended R. 4:30A and R. 4:64-5 to preclude the joinder of non-germane claims in a foreclosure action and to further direct when a cross-claim contesting the validity, priority or amount of any alleged prior encumbrance shall be determined. These amendments were specifically adopted to define the scope of the entire controversy doctrine in the mortgage foreclosure proceeding. Pressler, Current N.J. Court Rules, comment R. 4:64-5 (1994). The Court has also acknowledged that joinder may sometimes result in unfairness or unclear presentation of the issues. Crispin, supra, 96 N.J. at 354, 476 A.2d 250. Thus a party may be excused from complying with the entire controversy doctrine as to joinder of claims if any potential "unfairness to litigants, confusion in the presentation of issues, administrative unmanageability, or distortion in the truth-determining process" would result from application of the doctrine. Id. at 355, 476 A.2d 250. Furthermore, application of the doctrine is limited in that, "[T]he party whose claim is being sought to be barred must have had a fair and reasonable opportunity to have fully litigated that claim in the original action." Cafferata v. Peyser, 251 N.J. Super. 256, 261, 597 A.2d 1101 (App.Div. 1991).
Defendant's motion for summary judgment raising the entire controversy doctrine as a bar was denied. No opinion has been provided to this court. In a brief memorandum of decision, however, Judge Michael R. Connor concluded that the Stebbins complaint should not be barred by R. 4:30A because the exception set forth in Humble Oil and Ref. Co. v. Church, 100 N.J. Super. 495, 242 A.2d 652 (App.Div. 1968) was applicable.
Humble Oil involved the collision of a tractor trailer owned by Humble Oil and two vehicles. A passenger in one of the cars was killed. A wrongful death action was instituted against both passenger car drivers and Humble Oil. The only cross-claims asserted by Humble Oil in that action were for contribution and indemnification. Humble Oil was represented by an attorney assigned through its insurance company. After a settlement had been *445 reached in the wrongful death action, Humble Oil filed a separate complaint against the two passenger car drivers for property damage to its tractor trailer. This court not only emphasized that the insurance company, not Humble Oil, had authorized the settlement but also considered the property damage claim independent of Humble Oil's claim for contribution and indemnification to the wrongful death claim. Accordingly, this court ruled that the entire controversy doctrine was inapplicable. Humble Oil, supra, 100 N.J. Super. at 498-500, 242 A.2d 652.
Since the Humble Oil decision, automobile personal injury litigation has been treated generally as an exception to the mandatory joinder of claims required by the entire controversy doctrine. Thus, a defendant in an automobile personal injury action has not routinely filed an affirmative claim in that action. That defendant may and frequently does, however, file a separate action, and provides notice of other claims emanating from the same accident by the certification required by R. 4:5-1(b)(2). The filing of the independent action while the other personal injury claims are pending satisfies the requirements of the entire controversy doctrine since it places the other parties and the court on notice of all claims arising out of the single accident. A timely motion to consolidate or to change venue allows comprehensive case management of all related claims. However, the entire controversy doctrine as a possible bar to an action is implicated when a defendant's personal claims are asserted after some or all of the other claims have been resolved.
After the summary judgment motion was denied, this court decided Burrell v. Quaranta, 259 N.J. Super. 243, 612 A.2d 379 (App.Div. 1992). Since Burrell presents the situation of multiple lawsuits flowing from a single motor vehicle accident, defendant urges us to apply the rule in that case.
In Burrell, several motor vehicle accidents occurred as a result of a liquid which had spilled and frozen on the highway. Quaranta's vehicle was struck by a vehicle driven by Burrell. In May 1989, Quaranta filed a personal injury complaint against all drivers, *446 owners and entities responsible for the multi-vehicle accident, including Burrell. Burrell's insurance company appointed counsel to defend the suit who filed an answer and cross-claim for contribution against the other defendants. Soon after the accident Burrell retained an attorney to represent his personal interests. This attorney referred him to a physician who contemporaneously with the filing of Quaranta's complaint, diagnosed a torn rotator cuff. Following an arbitration hearing in July 1990, all parties settled with Quaranta. The stipulation of dismissal was dated August 1990 and filed in November 1990. Finally, in September 1990, Burrell filed a personal injury action against virtually all of the same parties who had been in the original action brought by Quaranta.
The Burrell court rejected Burrell's contention that the entire controversy doctrine should not apply when the plaintiff was represented in the initial action by an attorney appointed by the insurance carrier. First, this panel observed that Humble Oil is not inconsistent with the entire controversy doctrine, as refined in later decisions. The key factual distinction is that Humble Oil brought its property damage claim nearly two years before its carrier and the carrier for the other parties settled the wrongful death suit.[1] Thus, all parties knew of all claims prior to resolution of the first case. Burrell, supra, 259 N.J. Super. at 250, 612 A.2d *447 379. Second, Burrell questioned the continuing viability of the broad holding of Humble Oil, stating:
Even when Humble Oil was decided, the entire controversy doctrine, as it had evolved, would have prohibited a party from suing for property damage, trying that suit to conclusion and then bringing a separate suit for personal injury. While, as a general rule, we are bound by the decisions of the State's highest courts, including the Court of Errors and Appeals, an exception exists where more recent decisions of the Supreme Court clearly undermine the authority of a prior decision, although not expressly overruling it. That is the situation here. We thus hold the entire controversy doctrine fully applicable to Burrell's lawsuit.
[Id. at 252, 612 A.2d 379 (citations omitted).]
Having concluded that the entire controversy doctrine was applicable in the multiple claim automobile accident personal injury litigation context, the court considered whether there are circumstances in which litigation like Burrell's may proceed despite the entire controversy bar. Significantly, unlike the court in Humble Oil, Burrell discounted the significance of representation by counsel assigned by a driver's insurance carrier. The court stated:
Normally, the proper defendant in a negligence action is the alleged tortfeasor, not the tortfeasor's liability carrier. See Manukas v. American Ins. Co., 98 N.J. Super. 522, 524 [237 A.2d 898] (App.Div. 1968). Quaranta sued Burrell, not Allstate. Allstate had a fiduciary duty to represent its insured. Lieberman v. Employers Ins. of Wausau, 84 N.J. 325, 336 [419 A.2d 417] (1980). See Rova Farms Resort, Inc. v. Investors Ins. Co. of America, 65 N.J. 474, 492 [323 A.2d 495] (1974). That means Allstate had to put Burrell's interests ahead of its own, Lieberman, supra, 84 N.J. at 336 [419 A.2d 417] although here there was no conflict. Likewise Spence, the attorney selected by Allstate to represent Burrell, was Burrell's attorney. Id. at 338 [419 A.2d 417]. Spence was obligated to protect and promote Burrell's interests to the same extent as he would if he were personally hired by and paid by Burrell. Id. at 338-39 [419 A.2d 417]. Thus, Burrell's suggestion that there was no identity of interest between him and the insurance company in Quaranta's suit is incorrect.
[Burrell, supra, 259 N.J. Super. at 252-53, 612 A.2d 379.]
In deciding that the equities of the situation did not warrant excuse from the application of the entire controversy doctrine, the court noted that Burrell was represented by two attorneys virtually from the inception of the prior action and knew of the nature and extent of his injury almost a year prior to settlement of the Quaranta action. Id. at 254, 612 A.2d 379.
*448 The case before us is factually distinguishable from Burrell. Unlike Burrell, Joseph Stebbins learned of the severity of his injury eighteen months after the accident and eight months after the first suit was filed. He learned that this injury required surgery only one month before his action was filed. If Stebbins had initiated suit earlier, the matter could have been compromised before the full extent of his injuries were appreciated by him or his attorney.[2]
We choose not to apply Burrell to this case for a more fundamental reason; we are not convinced that the entire controversy doctrine should apply in all instances of multiple claims arising out of a single motor vehicle accident.
Although we do not necessarily disagree with the Burrell court's statement of the primacy of insurance defense counsel's obligation to pursue the interests of its driver client over that of the insurer, we are troubled by the impact that the Burrell statement could have in the day-to-day representation of parties in auto negligence litigation, particularly if its rule is applied retroactively. The complex relationship established by the provision of an attorney by an insurance company to an insured to provide a defense to a covered claim has often been the subject of comment by the Supreme Court. The issues spawned by this relationship are numerous. In Rova Farms Resort, Inc. v. Investors Ins. Co. of America, 65 N.J. 474, 323 A.2d 495 (1974), the Court was concerned with the duty of the assigned defense attorney to the insured in the face of a claim potentially in excess of coverage. In Burd v. Sussex Mutual Ins. Co., 56 N.J. 383, 267 A.2d 7 (1970), *449 the Court addressed the obligation of the insurance company to provide a defense when a complaint against its insured stated causes of action for covered, e.g. negligence, and uncovered, e.g. intentional claims, and whether the insurance company should be able to control the defense to the possible detriment of its insured. In re Weiss, Healey and Rea, 109 N.J. 246, 536 A.2d 266 (1988), addressed the problems presented by the use of a firm name by employee-attorneys of an insurance company and the possibility that an insured could be misled concerning the scope of its services and representation. Furthermore, two recent cases decided by this court underscore the continuing tension encountered by insureds and insurers concerning the protection and promotion of each insured's interests and conservation of the insurer's financial resources. See Montanez v. Irizarry-Rodriguez, 273 N.J. Super. 276, 641 A.2d 1079 (App.Div. 1994); Wolpaw v. General Accident Ins. Co., 272 N.J. Super. 41, 639 A.2d 338 (App.Div.), certif. denied, 137 N.J. 316, 645 A.2d 143 (1994). We, therefore, hesitate to dismiss, as did Burrell, Humble Oil's placement of significance on the duality of roles of assigned counsel.
The Burrell decision also raises many issues concerning the implementation of its rule. Those issues include whether the insurance defense counsel must assert the personal claim, whether the injured insured must retain private counsel, whether two counsel may simultaneously represent the injured insured, and what role private counsel has in the insurance company's decision to settle the claim against its insured. We do not mean to suggest that these issues are insoluble. See Rova Farms, supra, 65 N.J. at 496-502, 323 A.2d 495. However, the Burrell rule upsets the traditional approach to the defense of an insured and the prosecution of the insured's affirmative claim in automobile negligence actions.
The possible inequities which could visit a person injured in an automobile accident who is made a defendant in a personal injury action and provided a defense by his insurance company is well illustrated in this case. Stebbins knew he was injured and retained *450 an attorney within days of the accident; however, he learned of the true nature of his injury only five months before he commenced suit and learned of the need for surgery approximately one month before he commenced suit. Early joinder could have precipitated a premature settlement of Stebbins' claims. Furthermore, the prosecution of Joseph Stebbins' personal injury claim and the defense of the Skinner, Clisham and Danley actions would have been to some degree at cross purposes. Insurance defense counsel was determined to shield or minimize Stebbins liability and secondarily the insurer's financial responsibility. To that end settlements were effected in which Stebbins contributed 10% to the Clisham settlement and presumably other funds to the Skinner and Danley settlements. His personal counsel, however, sought to maximize his recovery and any acknowledgment of negligence and contribution to a settlement could be utilized to diminish his award.
Finally, we note Robbins was not prejudiced. His insurance company had been aware of the Stebbins injury, the extent and cost of his treatment and the serious nature of the injury for over a year and a half before this last suit was filed.
Therefore, we conclude that fairness to litigants in automobile negligence actions in which the attorney assigned by the insurance company controls the defense and disposition of the case dictates that the entire controversy doctrine should not require the mandatory joinder of all claims in a single proceeding.
Accordingly, the order denying defendant's motion for summary judgment is affirmed.
NOTES
[1] A close examination of Humble Oil suggests that this factual distinction is not accurate. According to the Humble Oil opinion, the property damage claim was commenced in 1966 and the consent judgment concluding the wrongful death action was filed in 1968. However, the opinion also notes that "about a month prior to the settlement of the [wrongful death] action, Humble Oil retained for prosecution of its property damage claim the same firm of attorneys as the insurance company had designated to defend Humble...." Humble Oil, supra, 100 N.J. Super. at 498, 242 A.2d 652. (emphasis added). Furthermore, once the Humble Oil property damage action was filed, a motion for summary judgment was filed. That motion raised the prior wrongful death action, its settlement and the entry of a consent judgment. Id. at 497, 242 A.2d 652. This leads us to conclude that the opinion contains a typographical error and that the consent judgment was entered on June 13, 1966, not June 13, 1968.
[2] It is also suggested that we adopt a technical analysis to determine whether any of the prior actions remained active at the time the Stebbins complaint was filed. That analysis is not helpful in deciding whether the entire controversy doctrine should apply to a particular case. If the doctrine is to advance the dual purposes of efficient judicial administration and informed decision-making by the parties, the filing of the complaint, without more, will not allow either the court or the parties to take appropriate and informed actions to resolve all claims in a single proceeding. See Molnar v. Hedden, 138 N.J. 96, 103-04, 649 A.2d 71 (1994).