685 A.2d 7

OHIO CASUALTY A/S/O DIGIACINTO, PLAINTIFF–
RESPONDENT, v. MEADOWLANDS TOYOTA,
DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted September 11, 1996—Decided October 22, 1996.

Before Judges KING and CONLEY.

*Ciarrocca and Ciarrocca,* attorneys for appellant (*Mark P. Ciarrocca,* on the brief).

*Breslin & Trovini,* attorneys for respondent (*David S. Lafferty,* on the brief).

The opinion of the court was delivered by

KING, P.J.A.D.

This is a subrogation action by Ohio Casualty for property damage consequent upon a bailment of Barry C. DiGiacinto's automobile to a dealer for repairs. This case implicates the entire controversy doctrine, particularly as a result of *Prevratil v. Mohr,* 145 *N.J.* 180, 678 *A.*2d 243 (1996), decided on July 10, 1996, in the wake of the quartet of cases in the same vein decided on August 1, 1995. *See DiTrolio v. Antiles,* 142 *N.J.* 253, 662 *A.*2d 494 (1995);

*Circle Chevrolet Co. v. Giordano, Halleran & Ciesla,* 142 *N.J.* 280, 662 *A.*2d 509 (1995); *Mystic Isle Development Corp. v. Perskie & Nehmad,* 142 *N.J.* 310, 662 *A.*2d 523 (1995); *Mortgageling Corp. v. Commonwealth Land Title Ins. Co.,* 142 *N.J.* 336, 662 *A.*2d 536 (1995).

This case arises from a claim by DiGiacinto for property damage, which occurred while his vehicle was in the custody of defendant Meadowlands Toyota (Meadowlands) for repairs. The damage came from severe flooding at Meadowlands' property in Bergen County on December 11, 1992.

DiGiacinto filed a *pro se* complaint against Meadowlands in the Bergen County Special Civil Part on March 8, 1993. Judge Koblitz conducted a trial on liability and damages on March 29, 1993 and entered a judgment in DiGiacinto's favor for $60. Meadowlands was represented at the trial by its present counsel.

On December 22, 1994 Ohio Casualty as subrogee of DiGiacinto sued Meadowlands for its net subrogation loss of $5,035.50, not including the insured's $500 deductible. Ohio Casualty paid DiGiacinto $8,135 less the deductible for his casualty loss and realized $3,100.50 in salvage recovery. Meadowlands moved on June 12, 1995 to dismiss Ohio Casualty's action on the ground of the entire-controversy doctrine. Judge Austin denied the motion to dismiss on July 28, 1995. On November 13, 1995 Ohio Casualty moved for summary judgment on both liability and damages; this was granted on December 15, 1995.

Meadowlands raises two points on this appeal:

POINT I—OHIO CASUALTY'S SUBROGATION ACTION COMMENCED AFTER THEIR INSURED HAS CONCLUDED A PRIOR ACTION AGAINST THE SAME DEFENDANT ARISING OUT OF THE SAME INCIDENT IS BARRED BY THE ENTIRE CONTROVERSY DOCTRINE.

POINT II—THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT AS TO DAMAGES WHERE A FACTUAL ISSUE EXISTED AS TO THE AMOUNT OF THE PLAINTIFF'S LOSS.

We disagree with the first ground but agree with the second. We affirm on defendant's liability but remand for a trial on damages only.

At the trial in the Special Civil part, Judge Koblitz ruled that Meadowlands failed to exercise due care during the course of the bailment in view of the forecast of upcoming severe weather. She found that DiGiacinto's damages were limited to $60 for personal property damages or personal losses (a "Club" and the service cost for cancelling an extended warranty). Meadowlands and its liability carrier, Universal Underwriters, claim that they had no actual notice of Ohio Casualty's subrogation interest until July 1, 1993, several months after the conclusion of the trial before Judge Koblitz.

■ We reject Meadowlands' attempt to defeat Ohio Casualty's subrogation claim for $5,035 on entire-controversy doctrine grounds as basically unfair. The first action was brought by DiGiacinto alone, not by Ohio Casualty. He asked for general damages of $1,500. There is no suggestion in the record that Ohio Casualty either knew about the first action or in anyway participated in it. We are certain it did not. Clearly, Ohio Casualty's $5,035 subrogated property-damage loss was not advanced in that action in any fashion. At that trial, DiGiacinto told the judge and Meadowlands' counsel (the same counsel as on this appeal) that "my insurance carrier totaled the car" and that he collected a total loss value from Ohio Casualty, aside from his $500 deductible and personal losses. DiGiacinto there sought his deductible of $500, the value of his "Club," and his extended warranty which cost $700, but only $25 to cancel.

Judge Koblitz told DiGiacinto that he could not "collect on the $500 deductible because that's something the insurance company would have to sue for ... and then reimburse you for it...." Defense counsel for Meadowlands, Mark P. Ciarrocca, Esquire, agreed with the judge: "I think you're correct. It's a matter of involving his carrier." The judge ruled: "Your insurance company would have to sue."

Judge Koblitz then decided the contested liability issue against Meadowlands and awarded $60 damages to DiGiacinto saying:
All right. I'm prepared to decide this case and I make findings as follows:

The plaintiff indicates and the defendant does not dispute that the plaintiff left his car to get a new muffler, that it was noisy, it was in running condition, but it needed a new muffler. Unfortunately, the noreaster hit and the defendant's property was flooded and every car that was not up on a lift was flooded.

And the question is whether the defendant exercised reasonable care in keeping the cars in satisfactory condition or not; whether the property was likely to flood and therefore it was unreasonable to keep it; whether the defendant in hearing weather reports should have called the plaintiff and said your car can still run, get it off our property as soon as possible; whether perhaps the defendant allowed the car to sit in water and that somehow increased the damages on the car.

I find as follows:

The plaintiff is not able to collect on a $500 deductible. That would have to be done by the insurance company.

The damages—I'm going to treat the damages first because I think in some ways that's more significant than the liability. The plaintiff claims damages of $35 for replacing a Club, an anti-theft equipment on the car, and also $700 or some portion thereof for an extended care warranty. Now I have a copy of the warranty that was admitted into evidence, and the fact is that the plaintiff, who does have the obligation to mitigate damages, could have but did not cancel that extended care warranty. I'm going to deal with damages first and then go back to liability.

I find that the damages here for the—not counting the deductible which cannot be considered here as damages, would be $35 to replace the Club and there is a $25 processing fee which the cancellation requires this $25 processing fee. Other than that they pro rate it apparently and will cancel it.

I accept the defendant's argument that in fact there was a benefit from this extended care warranty because even though the initial warranty was still in effect, this extended care warranty gave certain other benefits that weren't available under the original guarantee. So I find that the damages are $60.

Now finding that the damages are $60, I am going to find that the defendant was negligent and that they perhaps—or they should have exercised more care. There were a couple of opportunities. They could have called the plaintiff and avoided this situation and even though this flooding has not occurred in the past, the weather reports were for extremely serious flooding conditions and the photographs that I've seen, although the don't tell me exactly where this car was parked, do indicate that this property was close to a river and so had the defendant been act—been exercising due diligence, they would have perhaps have called the cars that were driveable and asked the people to take them off the lot. So I find for the plaintiff in the amount of $60.

This judgment was not appealed and Meadowlands asserts it was paid.

As noted, Meadowlands and Universal Underwriters claimed that their first notice of Ohio Casualty's subrogation claim was on July 1, 1993 by a formal claim letter. Obviously, Ohio Casualty knew nothing about DiGiacinto's own earlier action until confront-

ed with the defense of the entire-controversy doctrine in its subrogation action. Ohio Casualty sued in June 1994. Defendant Meadowlands moved for summary judgment in late June 1995 and Judge Austin denied that motion on July 28, 1995. The judge later entered final judgment for Ohio Casualty for $5,035 on collateral estoppel grounds.

The recent Supreme Court cases all stress that the entire-controversy doctrine is rooted in fairness and equitable principles and that its applicability is best left to judicial discretion based on the particular circumstances of a case. *See DiTrolio v. Antiles*, 142 *N.J.* at 272, 662 *A.*2d 494; *Circle Chevrolet*, 142 *N.J.* at 289, 662 *A.*2d 509; *Mystic Isles*, 142 *N.J.* at 323, 662 *A.*2d 523. This philosophy was repeated in *Prevratil v. Mohr*, 145 *N.J.* 180, 183, 678 *A.*2d 243 (1996), which squarely held that the "doctrine applies to actions arising out of automobile-accident cases." Justice Pollock in *Prevratil* carefully noted that "litigants currently involved in negligence litigation shall have time to make a timely application to assert affirmative claims," *ibid.*, blunting any surprise element from the ruling. While the case before us is not an "automobile-accident" case, it is a species of an automobile negligence case, a subrogation property damage case, based on breach of a contract of bailment through negligence.

We are satisfied that the case before us calls for equitable consideration. "Ultimately, the application of the doctrine depends on the exercise of judicial discretion in the facts of each case." *Id.* at 190, 678 *A.*2d 243. "The doctrine admits of equitable exceptions to avoid harsh results." *Id.* at 195, 678 *A.*2d 243. Even in *Prevratil*, where the plaintiff well knew of the pending action and of his own viable personal injury claim, the Supreme Court remanded to allow the Law Division judge "to consider the fairness of the dismissal." *Id.* at 196, 678 *A.*2d 243.

In the circumstance before us, Judge Koblitz dismissed DiGiacinto's $500 deductible claim well before the now-famous quartet of entire-controversy cases came down in 1995. DiGiacinto, as a *pro se* litigant, really had no choice but to accede to the judge's

instruction that only his comprehensive liability carrier could pursue his deductible claim. Ohio Casualty had no knowledge of DiGiacinto's lawsuit in the Special Civil Part just as Meadowlands Toyota and its carrier had no formal notice that DiGiacinto's comprehensive carrier eventually would pursue a claim. Since Meadowlands' counsel readily agreed in open court to the deferral of DiGiacinto's claim, he now has no equitable basis to complain on "fairness and efficiency" grounds. And, of course, this court itself had been divided until *Prevratil* came down in August 1996 on whether the doctrine even applied to automobile negligence cases. *See Prevratil v. Mohr,* 279 *N.J.Super.* 652, 653 *A.*2d 1190 (App. Div.1995); *Stebbins v. Robbins,* 278 *N.J.Super.* 439, 651 *A.*2d 486 (App.Div.1995); *Burrell v. Quaranta,* 259 *N.J.Super.* 243, 612 *A.*2d 379 (App.Div.1992).

We do agree with appellant Meadowlands' second point: the judge erred in granting summary judgment on the issue of damages. In support of its application for damages, Ohio Casualty attached a copy of a proof of loss and its payment draft to the motion papers. There was no certification or affidavit in support of the loss. At the trial before Judge Koblitz, Meadowlands did present some proof that attempted to draw in question the extent of damage to DiGiacinto's Toyota. This proof was never the basis for an adjudication. We conclude that due process requires a remand for a trial on damages. Of course, plaintiff is granted leave to amend to include the $500 deductible loss of its insured in the claim. *See R.* 4:9–2, 9–3.

Affirmed on liability; reversed and remanded for trial on damages.