**FEDERAL DEPOSIT INSURANCE CORPORATION, etc.**

**v.**

**Jeffrey S. MINTZ, Administrator, etc., et al.**

**Civil Action No. 95–4708 (NHP).**

United States District Court, D. New Jersey.

Dec. 18, 1996.

Susan L. Hall, Dwyer, Kinburn & Hall, Totowa, NJ, for Plaintiff.

Philip Lindeman, II, Richard Shapiro, Hellring, Lindeman, Goldstein & Siegal, Newark, NJ, for Defendants/Third Party Plaintiffs.

POLITAN, District Judge.

This matter involves the application of New Jersey's entire controversy doctrine ("the ECD"), a doctrine that to most members of the bar remains an enigma wrapped within a mystery. Defendants in this action, Jeffrey S. Mintz, Administrator c.t.a. for the Estate of Stephen J. Domenichetti, Robert J. Devlin, Raymond A. Hook, Domenichetti, Devlin & Hook, and Domenichetti & Hook (hereinafter "Defendants"), have moved for summary judgment under the ECD, claiming that this action against them is precluded because of two prior actions in which they should have been joined. Oral argument was heard on the motion on October 24, 1996. For the reasons outlined herein, defendants' motion is **DENIED.**

## FACTUAL DISCUSSION

In this matter, the defendant lawyers, Robert Devlin and Raymond Hook, and the Estate of Stephen Domenichetti are charged by the Federal Deposit Insurance Corporation ("FDIC"), as successor to Hometown Bank of Edison, New Jersey, with legal malpractice. In particular, the FDIC attributes the losses on several promissory notes to the negligence of the defendants, particularly Stephen Domenichetti, who committed suicide in 1994.

The FDIC alleges that Domenichetti rendered faulty legal advice to Hometown Bank with respect to what is often referred to in the banking industry as the "one borrower rule." The allegations against Devlin and Hook hinge upon their allegedly negligent supervision of the activities of their partnership with respect to the "one borrower" advice given to the bank in connection with a series of loans. Each series of loans, because they were interrelated in some way, allegedly exceeded the bank's legal lending limits under the loan to one borrower rule.

These loans can be described as follows: (1) The Covino/Middlesex Cartage/Absolute Realty loans; (2) the Bonanno loans; and (3) the Rieder loans.

### The Covino/Middlesex Cartage/Absolute Realty Loans

A loan was made to Absolute Realty in June 1989, which was guaranteed by members of the Covino and Dinardi families and by their carting companies (Covino Industrial and Middlesex Carting). Two loans were made in August 1989 to Middlesex Carting and to Covino Industries. Those two loans were guaranteed or endorsed by members of the Dinardi family and other "related" persons and entities.

### The Bonanno Loans

Loans were made to J. Carmine Bonanno and to his brother, Frank Bonanno, in September 1989. Each brother guaranteed the loan of the other.

### The Rieder Loans

The Rieder loans consisted of three loans, two of which were made to Ralph Rieder and his brother-in-law, George Karasik. Each of them guaranteed the obligation of the other. A third loan was made to Al Rieder, Ralph Rieder's father and George Karasik's father-in-law. Apparently, this loan was not guaranteed by anyone.

In 1992 and 1993, two litigations developed concerning the Al Rieder loan. The first was instituted by Hometown Bank, and the second was instituted by Al Rieder against the FDIC. The two actions were subsequently consolidated and settled prior to trial. The Complaint in the *Al Rieder v. FDIC* matter alleged that the loan to Al Rieder was made as an accommodation in order to advance loans to Karasic and Ralph Rieder in excess of Hometown Bank's legal lending limits.

## DISCUSSION

To apply the ECD in the context of this matter would be to cause an extreme extension of a doctrine that has indeed caused a great deal of confusion for members of the bench and bar. Defendants would have this Court preclude plaintiff from bringing an action against them regarding all three sets of loans, even though none of those loans were at issue in the prior two cases involving the Al Rieder loans.

■ This Court, even taking into consideration the New Jersey Supreme Court's tremendous expansion of the ECD in the recent past, fails to see the equity in penalizing the FDIC for not having the ability to prognosticate that, if it did not join Mr. Domenichetti and allege malpractice in either of the Al Rieder cases, it would be barred from bringing an action against him or his firm on three separate packages of loans. Although the ECD is recognized as being the "strictest rule of compulsory joinder in the nation," the Appellate Division of the New Jersey Superior Court has stated that the doctrine does not require strict application; rather, the equity of each individual situation must be taken into account. *Hulmes v. Honda Motor Co., Ltd.,* 924 F.Supp. 673 (D.N.J. 1996) (citing *Burrell v. Quaranta,* 259 N.J.Super. 243, 612 A.2d 379 (App.Div.1992)).

■ The ECD, which functions as an affirmative defense, precludes a second action raising claims or joining parties which should have been raised or joined in a prior action involving the same controversy. The doctrine received exhaustive treatment by the New Jersey Supreme Court in 1995, and those decisions have been alternately praised and decried. *See Circle Chevrolet Co. v. Giordano, Halleran & Ciesla,* 142 N.J. 280, 289–90, 662 A.2d 509 (1995); *DiTrolio v. Antiles,* 142 N.J. 253, 266–67, 662 A.2d 494 (1995); *Mortgagelinq Corp. v. Commonwealth Land Title Ins. Co.,* 142 N.J. 336, 343, 662 A.2d 536 (1995); *Mystic Isle Dev. Corp. v. Perskie & Nehmad,* 142 N.J. 310, 322–23, 662 A.2d 523 (1995). For claims to arise from the same controversy, thereby implicating the ECD, they must "derive from a single transaction or series of related transactions." *Malaker Corp. v. First Jersey Nat'l Bank,* 163 N.J.Super. 463, 497, 395 A.2d 222 (App.Div.1978), *certif. den.,* 79 N.J. 488, 401 A.2d 243 (1979). *Accord Cogdell v. Hospital Ctr. at Orange,* 116 N.J. 7, 15, 560 A.2d 1169 (1989). Put another way, there must be a common nucleus of operative facts.

■ The ECD mandates that "the adjudication of a legal controversy should occur in one litigation in only one court." *Cogdell,* 116 N.J. at 15, 560 A.2d 1169. The rule has been extended "to include all affirmative claims that a party might have against another party." *Circle Chevrolet,* 142 N.J. at 289, 662 A.2d 509. "[I]f parties or persons will, after final judgment is entered, be likely to have to engage in additional litigation to conclusively dispose of their respective bundles of rights and liabilities that derive from a single transaction or related series of transactions, the omitted components of the dispute or controversy must be regarded as constituting an element of one mandatory unit of litigation." *DiTrolio,* 142 N.J. at 267, 662 A.2d 494. *See also D.K. v. Roseland*

*Board of Education,* 903 F.Supp. 797, 800 (D.N.J.1995).

In *Wm. Blanchard Co. v. Beach Concrete Co.,* 150 N.J.Super. 277, 375 A.2d 675 (App. Div.), *certif. den.,* 75 N.J. 528, 384 A.2d 507 (1977), the court stated succinctly: "The point, of course, is that a component of the controversy may not be unfairly withheld, and a withholding is by definition unfair if its effect is to render the pending litigation merely one inning of the whole ball game." 150 N.J.Super. at 294, 375 A.2d 675. What defendants fail to realize is that the action at bar is an entirely different game.

The *Wm. Blanchard* case, and all other cases where the ECD is successfully invoked, involve "a single transaction or series of related transactions." *Mystic Isle,* 142 N.J. at 323, 662 A.2d 523. It is the "commonality of facts, rather than the commonality of issues, parties or remedies that defines the scope of the controversy and implicates the joinder requirements of the entire controversy doctrine." *DiTrolio,* 142 N.J. at 272, 662 A.2d 494.

Here, there is no showing that there is a commonality of facts, or a common nucleus of operative fact, between the Al Rieder loan and the three packages of loans at issue in this matter. Defendants maintain that the "core set of facts" in this case—and its connection with the Al Rieder cases—is Domenichetti's allegedly deficient legal advice. The Court declines to make such a leap.

What the defendants would have this Court do is conclude that the FDIC should have joined the defendants in one or both of the previous Al Rieder actions, then brought .claims against all other defaulting debtors while joining any malpractice claims relating to those other loans with the malpractice claims regarding the Al Rieder loans. This extrapolation of the ECD is anathema.

 Of course, were the FDIC to have included malpractice claims in this action which derived from advice in connection with the Al Rieder loan, such claims would indeed be barred by the ECD if the FDIC, at the time of the prior two actions, knew or should have known of an accrued claim. Although the FDIC asserts that it did not know of

Domenichetti's alleged malpractice at the time of those two actions, that is not an issue here. The claims in this case arise from three different packages of loans by the bank. To now bar the FDIC from pursuing its claims against defendants would run counter to the notions of equity and "fair play" inherent in the ECD. The "polestar" of the application of the ECD is judicial fairness. *DiTrolio,* 142 N.J. at 272, 662 A.2d 494. Because the ECD is equitably rooted, "its application is left to judicial discretion based on the particular circumstances in a given case." *Mystic Isle,* 142 N.J. at 323, 662 A.2d 523. This Court declines to apply it here.

## CONCLUSION

Based upon the foregoing, defendants' motion for summary judgment under the entire controversy doctrine is DENIED.